**Amir SOLTANI; Amir Dowlatshahi; Ruben R. Vega; Abdul K. Kabir, Plaintiffs–Appellants,**

v.

**WESTERN & SOUTHERN LIFE IN-SURANCE COMPANY, a corporation, Defendant–Appellee.**

No. 99–56612.

United States Court of Appeals, Ninth Circuit.

Aug. 6, 2001.

Argued and Submitted March 7, 2001

Filed Aug. 6, 2001

Ellen R. Serbin, Perona, Langer, Beck & Lallande, Long Beach, California, for the plaintiffs-appellants.

Ann C. Schneider, Galton & Helm LLP, Los Angeles, California, for the defendant-appellee.

Before: HUG, and B. FLETCHER, Circuit Judges, SAMUEL P. KING, District Judge.[1]

SAMUEL P. KING, District Judge:

Amir Soltani, Amir Dowlatshahi, Ruben Raul Vega, and Abdul K. Kabir ("Appellants") appeal the district court's grant of summary judgment in favor of Defendant Western & Southern Life Insurance Company ("Western–Southern") The appeal presents two related questions of California law: Whether contractual provisions that (1) shorten statutes of limitations to six months (applied to a suit for wrongful termination or unfair business practices), and (2) require ten days written notice of "the particulars of a claim" prior to filing suit, are unconscionable and unenforceable.

Our answer is no to the first provision and yes to the second. Accordingly, we affirm in part and vacate and remand in part.

## BACKGROUND

Appellants sold life insurance as agents for Western–Southern. Although the merits of the suit are not at issue here, Appellants' complaint basically contends that Western–Southern wrongfully terminated Appellants' employment in violation of public policy because they refused, as required by Western–Southern, to pay certain premiums for policy holders to prevent policies from lapsing. The suit contends that this requirement is an unfair business practice under California law.

---

1. The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

Appellants' employment contracts consist of (1) either a "Sales Manager's Agreement" (applicable to Soltani) or a "Sales Representative's Agreement" (applicable to the other Appellants) with Western–Southern, (2) and a related "Agent Agreement" (applicable to all Appellants) with a subsidiary of Western–Southern. The Sales Manager's Agreement and Sales Representative's Agreements with Western–Southern enabled Appellants to sell Western–Southern products, while the Agent Agreement was to allow the sale of products of other insurers.

The Sales Manager's Agreement and Sales Representative's Agreement both contain the following clauses requiring (1) suits to be brought within six months of termination, and (2) ten days written notice to be given before commencing suit:

### Section III. Legal Proceedings

**You agree:**

. . . .

B. Not to commence any action or suit relating to your employment with Western–Southern until ten days after service upon the Chairman, President or Secretary of a written statement of the particulars and amount of your claim. C. Not to commence any action or suit relating to your employment with Western–Southern more than six months after the date of termination of such employment, and to waive any statute of limitation to the contrary

(bold and italics in original).

Likewise, the Agent Agreement contains the following paragraph requiring suits to be brought within six months:

17. LEGAL PROCEEDINGS: You agree not to commence any action or suit relating to this agreement or your relationship with [Western–Southern] Agency more than six months after termination of this Agreement, and to

waive any statute of limitation to the contrary.

(uppercase in original).

Appellants Soltani, Vega, and Kabir did not file suit within six months of termination. According to the complaint, they were all terminated before November of 1997. The suit was filed in California superior court on September 8, 1998—some ten months after termination. After removing the suit to federal court based upon diversity of citizenship, Western–Southern invoked the six-month limitation provision and moved for summary judgment on the ground that the suit was time-barred. The parties do not dispute that California substantive law applies.

Similarly, although Appellant Dowlatshahi had filed suit within six months of his termination (he was terminated in March of 1998), Dowlatshahi had not given Western–Southern written notice of "the particulars and amount" of his claim as set forth in the contractual ten-day notice of suit clause. Western–Southern invoked the clause and sought summary judgment.

The district court agreed that the clauses were enforceable and granted summary judgment in favor of Western–Southern. The district court rejected Appellants' argument that the contractual provisions were unconscionable and therefore unenforceable. After judgment was entered in favor of Western–Southern, Appellants filed a timely notice of appeal.

## STANDARD OF REVIEW

■ The interpretation and construction of statutes are questions of law reviewed de novo. *See Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1495 (9th Cir.1997). A district court's interpretation of state law is reviewed under the same de novo standard as are questions of federal law. *See Salve Regina College v. Russell*, 499

U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The district court's dismissal on statute of limitations grounds presents a question of law reviewed de novo. *See Williamson v. General Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir.2000).

## DISCUSSION

### I. Shortened limitations provision.

■ We begin with the contractual six-month limitation provision. Case law heavily favors affirming on this issue. Many California cases have upheld contractual shortening of statutes of limitations in different types of contracts, including employment situations. Cases from other jurisdictions also support affirmance. Appellants have cited no case specifically striking down a contractual provision shortening a limitations period. There certainly are, however, cases striking particular contractual clauses as unconscionable. *See Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal.4th 83, 99 Cal. Rptr.2d 745, 6 P.3d 669 (2000) (striking mandatory arbitration clause as unconscionable). Appellants, therefore, argue under a more general unconscionability analysis that they were presented with contracts of adhesion, could not negotiate terms, and thus should not be held to the shortened limitations period.

Cal. Civ.Code § 1670.5(a) (1979) provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

■ This statutory provision codified the tenet that a court can refuse to enforce a contractual clause it finds unconsciona-ble. In *Armendariz,* the California Supreme Court applied section 1670.5(a) and held that mandatory contractual provisions requiring arbitration of wrongful termination discrimination claims were unconscionable and contrary to public policy. *See id.,* 99 Cal.Rptr.2d 745, 6 P.3d at 694. Although the present appeal does not involve arbitration clauses, some of the principles explained in *Armendariz* are applicable here. *Armendariz* set forth well-accepted analysis for determining whether a contractual provision is unconscionable:

> [U]nconscionability has both a "procedural" and a "substantive" element, the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results.... [B]oth [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. Essentially a sliding scale is invoked .... the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

*Id.* at 690 (quoting *Stirlen v. Supercuts,* 51 Cal.App.4th 1519, 1533, 60 Cal.Rptr.2d 138 (1997) (other citations omitted)).

### A.

The first prong is procedural unconscionability. The court focuses on whether the contract was one of adhesion. Was it "imposed on employees as a condition of employment"? Was there "an opportunity to negotiate"? *Id.* at 690, 60 Cal.Rptr.2d 138. "Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. It focuses on factors of oppression and surprise." *Kin-*

*ney v. United Healthcare Services,* 70 Cal. App.4th 1322, 83 Cal.Rptr.2d 348, 352–53 (1999).

In support of procedural unconscionability, each Appellant submitted declarations stating, in pertinent part:

3. After accepting employment with Western–Southern, I was periodically presented with stacks of forms to sign by the District Manager, Peter Borrero.

4. I was not allowed time to read the documents. Therefore, I do not have any specific recollection of signing the Sales Manager Agreement or Sales Representative Agreement.

5. Neither Peter Borrero nor any other Western–Southern representative reviewed the terms of the Agreements with me.

6. I was not given the opportunity to discuss, negotiate or modify the terms of the Agreements.

7. I was not aware of any clause restricting the time in which I could commence an action. I did not explicitly agree to such limitation.

In response, Western–Southern submitted declarations and deposition testimony indicating that the agreements were signed when Appellants began their employment (contradicting paragraph 3 of the declarations), but not specifically contesting the allegation that the terms were nonnegotiable.

As for surprise, the district court reasoned that the clauses were not hidden and were in a normal font. Indeed, the provisions were in "standard" italics, uppercase, or boldface. The implication was that there was no surprise. Nevertheless, all indications are that these were indeed "form" Western–Southern agent contracts. Construing the evidence in favor of the non-moving party (Appellants), as we must do at the summary judgment stage, the court presumes some element of adhesion. The procedural unconscionability prong favors the Appellants.

██ However, even if the contracts were adhesive, the court applies a sliding scale and must also examine the substantive prong. *See Armendariz,* 99 Cal. Rptr.2d 745, 6 P.3d at 690. Merely because a contract is one of adhesion does not automatically render it unenforceable. There must be some showing of substantive unconscionability. *See id.* ("both [prongs must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability").

### B.

██ "Substantive unconscionability relates to the effect of the contract or provision." *West v. Henderson,* 227 Cal.App.3d 1578, 278 Cal.Rptr. 570, 575 (1991). A "lack of mutuality" is relevant in analyzing this prong. *See Armendariz,* 99 Cal. Rptr.2d 745, 6 P.3d at 691. The term "focuses on the terms of the agreement and whether those terms are so one-sided as to *shock the conscience.*" *Kinney,* 83 Cal.Rptr.2d at 353 (citations and internal quotation marks omitted) (emphasis in original).

In this regard, the weight of California case law strongly indicates that the six-month limitation provision is not substantively unconscionable. *See Han v. Mobil Oil Corp.,* 73 F.3d 872, 877 (9th Cir.1995) ("California permits contracting parties to agree upon a shorter limitations period for bringing an action than prescribed by statute, so long as the time allowed is reasonable") (citations omitted); *West,* 278 Cal. Rptr. at 575–76 (finding six-month contractual limitations provision in a lease not unconscionable, despite lack of mutuality); *Capehart v. Heady,* 206 Cal.App.2d 386, 23 Cal.Rptr. 851, 853 (1st Dist.1962) (conclud-

ing that three-month limitation period in lease was not unreasonable); *Beeson v. Schloss,* 183 Cal. 618, 192 P. 292, 294 (1920) (finding six-month limitation reasonable in employment contract); *Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.,* 38 Cal.App.4th 1532, 46 Cal. Rptr.2d 33, 43 (1995) (citing cases).

Other jurisdictions agree. *See Timko v. Oakwood,* 625 N.W.2d 101, 106–07, 244 Mich.App. 234, 244–45 (2001) (finding 180-day period of limitation reasonable and rejecting adhesion contract argument) (citing *Rembert v. Ryan's Family Steak Houses, Inc.,* 235 Mich.App. 118, 596 N.W.2d 208 (1999) ("Courts will not invalidate contracts as adhesion contracts where the challenged provision is reasonable")). *See also Taylor v. Western and Southern Life Ins. Co.,* 966 F.2d 1188 (7th Cir.1992) (upholding identical six-month provision under Illinois law);[2] *Southcenter View Condominium Owners' Ass'n,* 47 Wash. App. 767, 736 P.2d 1075, 1078–79 (1987) (upholding one-year period and citing case law from Vermont and New York). *See generally* B.H. Glenn, Annotation, *Validity of Contractual Time Period, Shorter Than Statute of Limitations, for Bringing an Action,* 6 A.L.R.3d 1197, 1201 (1966) ("the general rule [is] that in the absence of a controlling statute a contract provision limiting the time for bringing an action thereon is valid if the stipulated period of time is reasonable").

The U.S. Supreme Court has also upheld such clauses. *See Order of United Commercial Travelers v. Wolfe,* 331 U.S. 586, 608, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947) ("In the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations provided that the shorter period itself shall be a reasonable period").

These cases find that a six-month period is not unreasonable, for among other reasons, because (1) Title VII has a similar six-month limitations period for discrimination claims (*see* 42 U.S.C. § 2000e–5(e)); (2) the Labor Management Relations Act requires breach of duty claims to be brought within six months, (*Myers,* 849 F.2d at 262); and (3) a party may waive a plea of the statute of limitations as a defense and may likewise waive a portion of the time granted in a statute of limitations, (*Hambrecht & Quist,* 46 Cal.Rptr.2d at 43).

Accordingly, we agree with Western–Southern that the six-month contractual limitation provision is not substantively unconscionable under California law. Given a sliding scale analysis, even assuming that the contract was a non-negotiable adhesion contract, the substantive prong controls. Indeed, California courts have upheld shortened limitation periods in *insurance* contracts, which are quintessential adhe-

---

**2.** Western–Southern cites numerous cases where courts have upheld the same six-month limitation provisions in contracts identical to those at issue here. *See Taylor,* 966 F.2d at 1202; *Myers v. Western–Southern Life Ins. Co.,* 849 F.2d 259, 260 (6th Cir.1988); *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 505 (7th Cir.1994); *Perez v. Western–Southern Life Ins. Co.,* 1987 WL 16355 (E.D.Mich.1987); *Smith v. Western–Southern Life,* No. C–3–99–421 (S.D.Ohio March 2000) (Exhibit A to Western–South-

ern's Request for Judicial Notice); *Boers v. Western–Southern Life Ins. Co.,* No. 5:99 CV 1683 (N.D.Ohio Sept. 2, 1999); *Duzan v. Western Southern Life Ins. Co.,* No. C–1–99–493 (S.D.Ohio May 9, 2000) (Exhibit C to Western–Southern's First Supplemental Request for Judicial Notice). While these cases indicate that the provision is in a standard Western–Southern employment contract—and in that sense is adhesive—the cases uniformly uphold the contractual limitation provision.

sion contracts. *See C & H Foods v. Hartford Ins. Co.,* 163 Cal.App.3d 1055, 211 Cal.Rptr. 765, 769 (1984); *Fageol Truck & Coach Co. v. Pacific Indemnity Co.,* 18 Cal.2d 748, 117 P.2d 669, 672 (1941).

The six-month limitation provision is enforceable. To this extent, the district court did not err in granting summary judgment in favor of Western–Southern.

## II. Ten-day Notice Provision.

### A.

Despite the validity of the six-month provision, Appellant Dowlatshahi's claims are not time-barred. He filed suit within six months of his termination. He failed, however, to give ten days written notice of his suit to Western–Southern. This raises the second provision from the "Sales Manager's Agreement" and "Sales Representative's Agreement." As set forth earlier, under the provision an employee agrees:

> Not to commence any action or suit relating to your employment with Western–Southern until ten days after service upon the Chairman, President or Secretary of a written statement of the particulars and amount of your claim.

Dowlatshahi contends that the provision is unenforceable. Initially, Dowlatshahi raises an argument that was not raised at the district-court level. He contends that the "Agent Agreement" contradicts the earlier "Sales Management Agreement" and, by its terms, supersedes the previous agreements. Because the Agent Agreement does not contain a ten-day notice provision (it only contains a six-month limitation), he argues that the district court erred in enforcing a notice provision.

■■■ We are not required to reach the issue here. *See, e.g., Johnson v. Director, Office of Workers' Compensation Programs,* 183 F.3d 1169, 1171 (9th Cir.1999) (repeating principle that court will not review an issue not raised below unless nec-essary to prevent manifest injustice). In any event, Dowlatshahi is wrong. The Agent Agreement applied to Western–Southern Agency, Inc.—a subsidiary of Western and Southern Life Insurance Company. The apparent purpose of the Agent Agreement was to enable insurance agents to sell other products besides those covered in the Sales Management Agreement. The preliminary paragraph of the Agent Agreement provided that "[Agency] hereby appoints you to act as its Agent with respect to the representation of [the 'represented companies' as set forth in Exhibit A]." Although the Agent Agreement contained a clause regarding superseding other agreements ("This agreement terminates and replaces all prior negotiations, agreements and addendums"), the clause was plainly referring to prior agreements with the subsidiary—Western–Southern *Agency*—not with Western and Southern Life Insurance Company.

### B.

■■■ On the merits, this clause presents a legal issue of apparent first impression under California law. The parties have cited no California case dealing with a contractual notice of suit provision in an employment context, and the court has found none. Without certifying a question to the California Supreme Court, "we are required to ascertain from all the available data what the state law is and apply it." *Insurance Co. of Pennsylvania v. Associated Int'l Ins. Co.,* 922 F.2d 516, 520 (9th Cir.1990) (citation and ellipses omitted). In addition to decisions from California intermediate appellate courts, " 'well-reasoned decisions from other jurisdictions' may also be considered." *Id.* (quoting *Takahashi v. Loomis Armored Car Serv.,* 625 F.2d 314, 316 (9th Cir. 1980)). "[W]e are ... required to use our 'own best judgment in predicting' how the Supreme Court of California would inter-

pret this ... contract." *Id.* In particular, in analyzing whether the ten-day notice-of-suit provision is unconscionable, we look both to California cases examining unconscionability in general as well as to notice-of-suit provisions in analogous contexts.

We first consider the justification for the notice-of-suit clause. Last year, when it struck down the mandatory arbitration clauses in the adhesion contracts at issue in *Armendariz,* the California Supreme Court considered the justification for a non-mutual, "one-sided" (i.e, requiring arbitration only for the employee but not for the employer) arbitration agreement. The California Supreme Court reasoned that "[w]ithout reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage." 99 Cal.Rptr.2d 745, 6 P.3d at 692.

> We emphasize that if an employer does have reasonable justification for the arrangement—i.e., a justification grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum—such an agreement would not be unconscionable. Without such justification, we must assume that it is.

*Id.* at 694. Given a lack of justification for the particular clause in that case, the California Supreme Court found it unconscionable and thus unenforceable.

Applying such reasoning here, we can discern little justification for the short ten-day notice provision in the Western–Southern contracts.[3] Ten days is simply not enough time for the company to investigate the factual basis of a claim, to attempt to settle claims without litigation or consider fiscal implications of potential litigation, or to take corrective action to prevent

other such claims. *Compare Hart v. Alameda County,* 76 Cal.App.4th 766, 90 Cal.Rptr.2d 386, 395 (1999) (discussing similar purposes of notice of claims provision of California Government Claims Act, Cal. Gov.Code §§ 905, 945.4); *Phillips v. Desert Hospital Dist.,* 49 Cal.3d 699, 263 Cal.Rptr. 119, 780 P.2d 349, 353 (1989) (In Bank) (discussing purpose of notice of claim provision in Tort Claims Act); *Thornburg v. Magnolia Regional Health Center,* 741 So.2d 220, 223 (Miss.1999) (discussing purpose of 90–day notice period for government to consider merits of claim and conduct necessary investigation); *Elkhorn Area School Dist. v. East Troy Community Sch. Dist.,* 110 Wis.2d 1, 327 N.W.2d 206, 208 (App.1982) (finding purpose of notice-of-injury statute is to allow prompt investigation).

Moreover, the ten-day notice provision alone does not prevent stale claims. The clause requires notice of *any* claim, whether or not it is within six-months of termination, or even whether it is based upon termination. It would bar suits while a plaintiff is employed that arose several years earlier (which are not otherwise barred by statutes of limitation) or such suits filed after a mere eleven days of accrual. The provision is thus different from notice-of-suit provisions requiring notice within a certain period of time from occurrence of an accident, which are partially justified to prevent stale claims. *Compare Inman v. Clyde Hall Drilling Company,* 369 P.2d 498 (1962) (upholding contractual clause requiring written notice of claim within thirty days after it arose).

Further, the ten-day written notice provision cannot be for purposes of judicial economy. It is unaccompanied by any corresponding requirement to exhaust inter-

---

**3.** As were the arbitration provisions at issue in *Armendariz,* the notice provisions here are non-mutual. There is no requirement that

Western–Southern give ten-days written notice for claims *against* its agents relating to their employment.

nal intra-company grievance procedures. Indeed, there is no indication that Western–Southern would do *anything* during that ten-day period. Where the effect of a failure to comply with the provision is to lose all legal remedies for wrongdoing regardless of the merits, the clause can work substantial prejudice to an employee. The notice-of-suit clause should not serve as "a technical escape-hatch by which to deny [relief]." *Insurance Company of Pennsylvania,* 922 F.2d at 523 (citation omitted). Its effect, with no discernable justification by Western–Southern, is merely to "maximize employer advantage" and bar any suits relating to the employment agreement. *See Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 692. That is, the notice provision has the effect of the mandatory arbitration clause that the California Supreme Court struck down in *Armendariz.* As in *Armendariz,* the failure to comply deprives an employee of a judicial forum and its concomitant rights.

## CONCLUSION

The provision shortening the limitation period to six months is not unconscionable under California law. Even assuming procedural unconscionability, the clause is not substantively unconscionable and is therefore enforceable. We affirm the grant of summary judgment in favor of Western–Southern as to Appellants Soltani, Vega and Kabir. The ten-day written notice provision, however, is unenforceable. Thus, as to Appellant Dowlatshahi, we vacate the grant of summary judgment and remand for trial. The parties shall bear their own costs.

AFFIRMED IN PART, VACATED AND REMANDED IN PART FOR TRIAL.